PEARSON, J.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| JASON A. WHITACRE, | ) | |
| | ) | CASE NO. 5:19CV809 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| NATIONS LENDING CORPORATION, *et* | ) | |
| *al.*, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendants. | ) | **ORDER** [Resolving ECF No. 8] |

This action was removed to this Court from the Summit County, Ohio, Court of Common

Pleas on April 11, 2019, on the basis of federal-question jurisdiction pursuant to 28 U.S.C. §

1331 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367. ECF No. 1. Following

removal, Plaintiff filed an amended complaint (ECF No. 4), to which Defendants filed a motion

to dismiss for failure to state a claim on which relief can be granted. ECF No. 8. Plaintiff

responded (ECF No. 15), and Defendants replied (ECF No. 16). For the reasons stated in this

Order, Defendants' motion to dismiss is granted in part. Count Eleven as to Defendant

LoanCare, Count One as to Defendant Nations Lending, and Count Five as to Defendants

LoanCare and Nations Lending remain. All other claims alleged in the Amended Complaint are

dismissed.

## I. Background

In March 2015, Plaintiff purchased a house. ECF No. 4 at PageID #: 52. To pay for the

house, Plaintiff obtained a mortgage through Defendant Nations Lending Corporation ("Nations

Lending"). *Id.* Defendant LoanCare, LLC ("LoanCare") serviced the loan on behalf of Nations Lending. *Id.* Plaintiff alleges an agency-principal relationship exists between Nations Lending and LoanCare. *Id.* at PageID #: 53. The mortgage loan is insured by the Federal Housing Authority. *Id.*

In December 2017, Plaintiff was separated from his employment. *Id.* at PageID #: 54. He alleges that he immediately notified LoanCare of this. *Id.* He also applied for complete forbearance of his loan. *Id.* LoanCare advised Plaintiff that he would be eligible for a forbearance because of his unemployment. *Id.* at PageID #: 55. He avers that LoanCare did not respond to his application for several weeks, then admitted to losing his application package. *Id.* LoanCare instructed Plaintiff to submit a new application package, and Plaintiff complied. *Id.*

Plaintiff secured employment in April 2018. *Id.* LoanCare allegedly determined that, because Plaintiff was now employed, he was no longer eligible for forbearance. *Id.* at PageID #: 56.

Plaintiff "eventually did fall behind on the payments." *Id.* He claims that, during a conversation with LoanCare staff, he was instructed to pay $5,864.95 to bring the account current. *Id.* Plaintiff made the payment. *Id.* Instead of bringing his account current, however, LoanCare allegedly applied only a single mortgage payment to Plaintiff's account. *Id.* Plaintiff claims that LoanCare waited three days before applying the second monthly payment to Plaintiff's account. *Id.* at PageID #: 57. Plaintiff also avers that, instead of applying the balance of the monies to Plaintiff's third monthly payment, LoanCare applied this amount to "other

items, including but not limited to the escrow account, a 'Suspense Sweep,' and alleged 'Late Charges.'" *Id.*

LoanCare determined that Plaintiff's account was delinquent. *Id.* Accordingly, LoanCare reported to credit reporting agencies that Plaintiff was late on his mortgage payments. *Id.* LoanCare demanded an additional $5,905.50 from Plaintiff to bring his account up to date. *Id.* at PageID #: 58. Plaintiff claims he unsuccessfully attempted to call LoanCare to discuss the status of his account. *Id.*

Plaintiff also claims that LoanCare calls him six days a week through an automated voice messaging system. *Id.* at PageID #: 58-59. He avers that he never consented to these calls, and, alternatively, revoked any consent to these calls. *Id.* at PageID #: 58-59. He additionally alleges that LoanCare has, on multiple occasions, sent a representative to Plaintiff's home to collect the balance allegedly due on his loan. *Id.*

## II. Legal Standard

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must take all well pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in th[e] complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned,

the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. It must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Twombly*, 550 U.S. at 556. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557 (brackets omitted). "[When] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged    but it has not 'show[n]'    'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)). The Court "need not accept as true a legal conclusion couched as a factual allegation or an unwarranted factual inference." *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012) (citations and internal quotation marks omitted).

## III. Analysis

Plaintiff alleges sixteen counts in his Amended Complaint against Defendants Nations Lending and LoanCare. Six of his claims arise under federal law. Count Nine alleges violations

(5:19CV809)

of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.  ECF No. 4 at PageID #: 66-67.  Counts Eleven, Twelve, Thirteen, Fourteen, and Fifteen allege violations of federal regulations promulgated by the Consumer Finance Protection Bureau ("CFPB").  *Id.* at PageID #: 67-71.  Plaintiff's remaining ten counts arise under state law.  Defendants move to dismiss all of Plaintiff's claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted.

### A.  Telephone Consumer Protection Act (Count Nine)

To succeed on his TCPA claim, Plaintiff must demonstrate that: "(1) a call was placed to a cell or wireless phone, (2) by the use of any automatic dialing system and/or leaving an artificial or prerecorded message, and (3) without prior [express] consent of the recipient." *Rodriguez v. Premier Bankcard, LLC*, 2018 WL 4184742, at *3 (N.D. Ohio Aug. 31, 2018) (quoting *Brown v. Hosto & Buchan, PLLC*, 748 F. Supp. 2d 847, 859 (W.D. Tenn. 2010) (alteration in original)).

Defendants argue that Plaintiff's TCPA claim (Count Nine) must be dismissed because its factual allegations are insufficient as a matter of law.  Plaintiff pleads:

> 127.  Defendants have made repeated calls to Plaintiff's cellular phone without his authorization using an automated machine dialer.
>
> 128.  Those calls ring to Plaintiff's cell phone without a live person on Defendants' end.
>
> 129.  Plaintiff expressed his lack of consent to automated calls, but Defendants refused to stop the automated calls.

ECF No. 4 at PageID #: 66.  Plaintiff does not describe how he "expressed his lack of consent," nor does he give any other details about the prerecorded phone calls.

5

The Sixth Circuit, quoting the Federal Communications Commission, has ruled, "[A] creditor doesn't violate the [TCPA] when it calls a debtor who has 'provided [his number] in connection with an existing debt." *Hill v. Homeward Residential, Inc.*, 799 F.3d 544, 551 (6th Cir. 2015) (quoting *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 564 (2008) (latter alteration in original)). Plaintiff concedes that LoanCare services his existing debt on behalf of Nations Lending. ECF No. 4 at PageID #: 52.

Moreover, "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called and the number which they have given, absent instructions to the contrary." *Baisden v. Credit Adjustments, Inc.*, 813 F.3d 338, 342 (6th Cir. 2016) (quoting 7 F.C.C. Rcd. 8752, 8769 (1992)). "Debtors 'typically give their cell phone number as part of a credit application . . . .'" *Rodriguez*, 2018 WL 4184742, at *5 (quoting *Hill*, 799 F.3d at 551) (alterations omitted). Plaintiff makes no suggestion in his Amended Complaint that he did not provide this routine datum to Defendants. Even if he did not, however, Plaintiff acknowledges that he voluntarily contacted LoanCare in December 2017 to request a forbearance in loan payment obligations. ECF No. 4 at PageID #: 54. Plaintiff does not allege, and it is implausible to infer, that he did not surrender his phone number to LoanCare or Nations Lending during one or both of those interactions.

In conclusory fashion, Plaintiff states that he "expressed his lack of consent to automated calls . . . ." ECF No. 4 at PageID #: 66. But a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not suffice to state a claim.

*Twombly*, 550 U.S. at 555. Nor may a pleading offer "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's claim under the TCPA.

**B. Claims Under Consumer Finance Protection Bureau Regulations**

Plaintiffs alleges five causes of action under CFPB federal regulations. His claims under 12 C.F.R. §§ 1024.39, 1024.40, and 1024.41 arise from the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq*. His claims under 12 C.F.R. §§ 1026.36 and 1026.41 arise from the Truth in Lending Act, 15 U.S.C. § 1601 *et seq*.

**1. 12 C.F.R. § 1026.36 (Count Eleven)**

A loan servicer is generally prohibited from "fail[ing] to credit a periodic payment to the consumer's loan account as of the date of receipt." 12 C.F.R. § 1026.36(c)(1)(i). A period payment is "an amount sufficient to cover principal, interest, and escrow (if applicable) for a given billing cycle." *Id.*

Plaintiff alleges that LoanCare instructed him to pay $5,864.95 in order to bring his account current. ECF No. 4 at PageID #: 56. He claims that he made this payment in full, but that the final period payment was "applied to other items, including but not limited to the escrow account, a 'Suspense Sweep,' and alleged 'Late Charges.'" *Id.* at PageID #: 57. Taken as true, these allegations indicate that Plaintiff made the applicable period payments, but that the final period payment was not credited to Plaintiff's loan account as of the date of receipt. Rather, the payment was either held in a suspense account or applied as a late charge.

Defendants claim that "because Plaintiff would incur late charges for paying late . . . the last payment would not be a full payment as detailed in application of payments in the mortgage." ECF No. 8-1 at PageID #: 115. They argue that, because the final payment was a partial payment, the charging of a late fee or placement of funds in a suspense account does not violate 12 C.F.R. § 1026.36. *Id.*; 12 C.F.R. § 1026.36(c)(1)(ii). But "[a] payment qualifies as a periodic payment even if it does not include amounts required to cover late fees, other fees, or non-escrow payments a servicer has advanced on a consumer's behalf." 12 C.F.R. § 1026.36(c)(1)(i). Plaintiff alleges that he made payment in full, and that, thereafter, Defendant LoanCare failed to credit the final periodic payment to his loan account. He has accordingly pleaded sufficient facts to state a plausible claim for relief against Defendant LoanCare.

Plaintiff, however, does not plead any facts to state a claim for relief under 12 C.F.R. § 1026.36(c) against Defendant Nations Lending. Nor can he. Section 1026.36(c) only applies to servicers, as defined under 12 C.F.R. § 1024.2(b). Section 1024.2(b) defines "servicer" as "a person responsible for the servicing of a federally related mortgage loan (including the person who makes or holds such loan if such person also services the loan)." *Id.* Plaintiff alleges that Nations Lending holds the loan, but does not service the loan. ECF No. 4 at PageID #: 52. Nations Lending is not a servicer under § 1026.36(c).

Accordingly, Defendants' motion to dismiss Plaintiff's claim under 12 C.F.R. § 1026.36 is granted as to Defendant Nations Lending but denied as to Defendant LoanCare.

## 2. 12 C.F.R. § 1024.39 (Count Twelve)

"[A] servicer shall establish or make good faith efforts to establish live contact with a delinquent borrower no later than the 36th day of a borrower's delinquency and again no later than 36 days after each payment due date so long as the borrower remains delinquent." 12 C.F.R. § 1024.39(a). Additionally, "a servicer shall provide to a delinquent borrower a written notice with the information set forth in paragraph (b)(2) of this section no later than the 45th day of the borrower's delinquency and again no later than 45 days after each payment due date so long as the borrower remains delinquent." *Id.* at § 1024.39(b)(1).

Plaintiff conclusorily alleges that "LoanCare failed to comply with [Section] 1024.39(a) and make good-faith efforts to establish live contact with Plaintiff prior to the 36th day of Plaintiff's alleged delinquency" and "LoanCare failed to comply with § 1024.39(b) and provide a required written notice to Plaintiff." ECF No. 4 at PageID #: 68. He alleges no facts in support, instead reciting the regulatory language without elaboration. A naked assertion, without more, does not give rise to a plausible claim for relief. *See Twombly*, 550 U.S. at 557. Because Plaintiff has not stated a claim upon which relief can be granted under 12 C.F.R. § 1024.39, this claim is dismissed.

### 3. 12 C.F.R. § 1024.40 (Count Thirteen)

"No private cause of action exists under 12 C.F.R. § 1024.40." *Necak v. Select Portfolio Servicing, Inc.*, No. 1:17-CV-1473, 2019 WL 1877174, at *6 (N.D. Ohio Apr. 26, 2019); *Schmidt v. PennyMac Loan Servs., LLC*, 106 F. Supp. 3d 859, 870 (E.D. Mich. 2015) ("The CFPB crafted 12 C.F.R. § 1024.40 to preclude private causes of action."). To the extent Plaintiff argues *Necak* provides a cause of action through § 1024.40 under a pattern and practice theory, his claim also

fails for failure to allege any facts in support. Plaintiff has accordingly not stated a claim upon which relief can be granted under 12 C.F.R. § 1024.40. The Court dismisses this claim.

### 4. 12 C.F.R. § 1024.41 (Count Fourteen)

Plaintiff alleges that LoanCare violated 12 C.F.R. § 1024.41(c) by "fail[ing] to evaluate Plaintiff for all available loss mitigation options" and "fail[ing] to provide an accurate determination of Plaintiff's loss mitigation application." ECF No. 4 at PageID #: 70. Again, he pleads no facts in support of these bare assertions. A restatement of the regulatory language does not suffice. The Court grants Defendants' motion to dismiss as to this claim.

### 5. 12 C.F.R. § 1026.41 (Count Fifteen)

A loan servicer is required to "provide the consumer, for each billing cycle, a periodic statement meeting the requirements of paragraphs (b), (c), and (d) of this section." 12 C.F.R. § 1026.41(a)(2). Paragraph (d) requires periodic statements to include, as applicable, the amount due, an explanation of the amount due, a past payment breakdown, a list of transaction activity since the last statement, partial payment information, contact information, account information, and delinquency information. *Id.* at 1026.41(d).

Plaintiff claims Defendant LoanCare sent him periodic statements with inaccurate information in February and March 2019. ECF No. 4 at PageID #: 71. 12 C.F.R. § 1026.41(d) requires the *inclusion* of this information in each periodic statement. Nothing in the regulatory language provides that § 1026.41(d) regulates the *accuracy* of this information. Plaintiff provides no legal authority in support of the proposition that a claim may be brought under § 1026.41(d) for purportedly inaccurate (but otherwise complete) periodic statements.

Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's claim under 12 C.F.R. § 1026.41.

### C. State Law Claims

Plaintiff also alleges ten causes of action under state law: (1) breach of contract, (2) fraudulent inducement, (3) promissory estoppel, (4) conversion, (5) declaratory judgment, (6) negligence, (7) negligent and intentional infliction of emotional distress, (8) violation of the Ohio Consumer Sales Practice Act ("OCSPA"), (9) tortious interference with credit expectancy, and (10) negligent misrepresentation.

### 1. Breach of Contract (Count One)

"Under Ohio law, a breach of contract claim is generally pleaded by stating '(1) the terms of the contract, (2) the performance by the plaintiff of his obligations, (3) the breach by the defendant, (4) damages, and (5) consideration.'" *Wells Fargo Bank, N.A. v. Favino*, No. 1:10-CV-571, 2011 WL 1256771, at *9 (N.D. Ohio Mar. 31, 2011) (quoting *American Sales, Inc. v. Boffo*, 593 N.E.2d 316, 321 (Ohio Ct. App. 1991)).

Plaintiff alleges that "[t]he parties' contract incorporates all the guidelines, rule promulgations, regulations and Mortgagee Letters issued by . . . (HUD)." ECF No. 4 at PageID #: 60. He claims that Defendants "failed to adhere to HUD guidelines incorporated into the contract." *Id.* But "the failure to comply with HUD regulations, when incorporated into the mortgage contract," does not provide "a basis for a breach of contract claim." *HSBC Bank USA, Natl. Tr. Co. v. Teagarden*, 6 N.E.3d 678, 686 (Ohio Ct. App. 2013).

Plaintiff additionally avers that Defendants "failed to apply Plaintiff's mortgage payments in accordance with the contract." ECF No. 4 at PageID #: 60. He claims that he spoke to LoanCare personnel, that he was told to pay $5,864.95 to bring his account current, and that he complied. *Id.* at PageID #: 56. He avers Defendants then violated the terms of the mortgage contract by "wait[ing] three days to apply the second payment to Plaintiff's account" and "improperly appl[ying] the [balance] to other items[.]" *Id.* Five days later, Defendants requested another $5,905.50 from Plaintiff to bring his account current. *Id.* at PageID #: 58.

Plaintiff admits that "Plaintiff and LoanCare do not [have a contractual relationship]." ECF No. 15 at PageID #: 236. His breach of contract claim against LoanCare is therefore subject to dismissal.

Plaintiff, however, has alleged sufficient facts to state a plausible claim for breach of contract against Nations Lending. Plaintiff alleges that his mortgage contract required him to pay $5,864.95 to bring his account current. ECF No. 4 at PageID #: 56. By making the payment, he performed on the contract.[1] *Id.* Nations Lending, through loan servicer LoanCare, breached the contract when Plaintiff's payment was applied in a manner that did not bring his account current, resulting in a subsequent demand for additional payment five days later. *Id.* at PageID #: 56-57.

Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's breach of contract claim against LoanCare but denies it as to Nations Lending.

---

[1] Defendants' assertion that Plaintiff failed to adequately plead performance because he fell behind on his mortgage payments is without merit. Plaintiff alleges that, after falling behind on his payments, he remitted a payment sufficient to bring his account current. ECF No. 4 at PageID #: 56.

## 2. Promissory Estoppel (Count Three)

A claim of promissory estoppel requires a plaintiff to plead facts showing "(1) a clear and unambiguous promise; (2) reliance upon the promise by the person to whom the promise is made; (3) the reliance is reasonable and foreseeable; and (4) the party seeking to enforce the agreement is injured as a result of its reliance." *Kena Properties, LLC v. Merchants Bank & Tr., 218 F. App'x 402, 406 (6th Cir. 2007)* (quotation omitted).

Plaintiff asserts that his promissory estoppel claims are based on LoanCare's promise to timely review his forbearance application and LoanCare's promise to apply Plaintiff's payment of $5,864.95 in a manner that would bring his account current. ECF No. 4 at PageID #: 62; ECF No. 15 at PageID #: 240.

Neither promise can support a claim for promissory estoppel. LoanCare's alleged promise to timely review his forbearance application is neither clear nor unambiguous. Plaintiff provides no clarification as to what constitutes timely review of a forbearance application. Nor do Plaintiff's continued payments on his mortgage loan show detrimental reliance on the alleged promise. Plaintiff was required to make payments on his mortgage loan, irrespective of LoanCare's promise to timely review Plaintiff's forbearance application. Further, a written contract provides the terms under which Plaintiff must make payment on his mortgage loan to keep his account current. ECF No. 4 at PageID #: 57, 60; ECF No. 8-1 at PageID #: 105-06. Promissory estoppel does not apply if an unambiguous written contract governs. *Pacifica Loan Five, LLC v. Fifth Third Bank*, No. 1:09-CV-930, 2011 WL 13228111, at *5 (S.D. Ohio Apr. 14, 2011).

Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's claim for promissory estoppel.

### 3. Fraudulent Inducement and Negligent Misrepresentation (Counts Two and Sixteen)

The elements for a claim of fraud are:

[1] a representation or, where there is a duty to disclose, concealment of a fact; [2] which is material to the transaction at hand; [3] made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; [4] with the intent of misleading another into relying upon it; [5] justifiable reliance upon the representation or concealment; and [6] a resulting injury proximately caused by the reliance.

*Dooley v. Wells Fargo Bank, Nat. Ass'n*, 941 F. Supp. 2d 862, 867 (S.D. Ohio 2013).

Under a claim for negligent misrepresentation:

[o]ne who, in the course of his business, profession, or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions ... is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information

*Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 505 (6th Cir. 2003).

Plaintiff's claims for fraudulent inducement and negligent misrepresentation are based upon two factual allegations. He first avers that "LoanCare representatives advised Plaintiff he would be eligible for a forbearance due to his unemployment," but falsely deemed Plaintiff ineligible for forbearance once he became employed. ECF No. 4 at PageID #: 55-56. He also asserts that LoanCare told him that his $5,864.95 payment would be applied in a manner that would bring his account current, but that LoanCare then improperly applied his payment and requested additional payment five days later. *Id.* at PageID #: 56-58.

These allegations are insufficient to state a claim for fraud[2] or negligent misrepresentation upon which relief can be granted. First, Plaintiff fails to show how he justifiably relied upon LoanCare's statements regarding his eligibility for forbearance. Even if LoanCare advised Plaintiff of his eligibility for forbearance due to his unemployment, Plaintiff did not change positions in reliance on this advice. He simply continued making payments on his mortgage, which he was required to do, unless and until LoanCare granted him a forbearance. ECF No. 4 at PageID #: 56. Nor is it clear how Plaintiff was induced into any action by LoanCare's determination that Plaintiff was ineligible for forbearance once he became employed. Following LoanCare's determination, Plaintiff continued making his monthly payments as required by contract. Id. Absent a showing of justifiable reliance, there is no claim for fraud or negligent misrepresentation. See Andersons, Inc., 348 F.3d at 505; Dooley, 941 F. Supp. 2d at 867.

Finally, to the extent Plaintiff's claims are grounded in his claim that Defendants told him that his $5,864.95 payment would bring his account current, he fails to plead how he was injured in reliance on Defendants' misrepresentation. Plaintiff argues that he was induced into making payment on his loan. ECF No. 15 at PageID #: 240. But Plaintiff also admits that, by making this payment, he "tendered the contractually-due funds." Id. at PageID #: 239.

Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's claims for fraudulent inducement and negligent misrepresentation.

### 4. Conversion (Count Four)

---

[2] Fraud must be pleaded with particularity. Fed. R. Civ. P. 9(b); see Frank v. Dana Corp., 547 F.3d 564, 569-70 (6th Cir. 2008).

(5:19CV809)

"The elements of a conversion claim are: (1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." *NPF IV, Inc. v. Transitional Health Servs.*, 922 F. Supp. 77, 81 (S.D. Ohio 1996). There is no action for conversion of overpayment made by a debtor to a creditor if there is no obligation to return the amount overpaid. *Id.* at 82.

Plaintiff does not allege that he is entitled to the return of the amount overpaid. He admits that the payment he made was due under the terms of his mortgage contract. ECF No. 15 at PageID #: 239. Instead, he claims Defendants improperly applied his payment. ECF No. 4 at PageID #: 62. Accordingly, no action for conversion exists.

Defendants' motion to dismiss Plaintiff's claim for conversion is granted.

### 5. Negligence (Count Six)

"The economic loss rule prevents the recovery in negligence of purely economic loss." *Reengineering Consultants, Ltd. v. EMC Corp.*, No. 2:08-CV-47, 2009 WL 113058, at *5 (S.D. Ohio Jan. 14, 2009). This is because claims of negligence are not designed to "compensate parties for losses suffered as a result of a breach of duties assumed only by agreement." *Id.* at *6 (quotation omitted). "A tort claim based upon the same actions as those upon which a claim of contract breach is based will exist independently of the contract action only if the breaching party also breaches a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed." *Misny*, 2016 WL 5231807, at *3 (quoting *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E.2d 1261, 1270 (Ohio Ct. App. 1996)).

Plaintiff claims Defendants had a duty, under CFPB regulations and independent of the parties' contract, to service his loan account consistent with those regulations. ECF No. 4 at PageID #: 64. But the CFPB regulations are only triggered by the existence of the mortgage contract. Absent the existence of the mortgage contract, no loan would exist, and the CFPB regulations would not impose a duty on Defendants. Plaintiff points to no other source of duty for his claim of negligence.

Defendants' motion to dismiss Plaintiff's claim for negligence is granted.

### 6. Negligent/Intentional Infliction of Emotional Distress (Count Seven)

A claim for intentional infliction of emotional distress lies only when a defendant's conduct was "so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community[.]" *Ondo v. City of Cleveland*, 795 F.3d 597, 612 (6th Cir. 2015) (quoting *Burkes v. Stidham*, 668 N.E.2d 982, 989 (1995)). Plaintiff alleges that Defendants "harass[ed] Plaintiff via telephone, [sent] personnel to Plaintiff's home on Sundays, and [refused] to adhere to state and federal law in servicing Plaintiff's loan[.]" ECF No. 4 at PageID #: 65. This conduct simply does not rise to the level of extreme and outrageous behavior giving rise to an IIED claim under Ohio law.

Nor can Plaintiff maintain a cause of action for negligent infliction of emotional distress. "To state a claim for negligent infliction of emotional distress under Ohio law, the plaintiff must allege that he was aware of real physical danger to himself or another." *Doe v. SexSearch.com*, 551 F.3d 412, 417 (6th Cir. 2008). Plaintiff does not allege any awareness of physical danger to himself or anyone else.

(5:19CV809)

The Court grants Defendants' motion to dismiss Plaintiff's claims for negligent infliction of emotional distress and intentional infliction of emotional distress.

### 7. Tortious Interference with Credit Expectancy (Count Ten)

Plaintiff's common law claim for tortious interference with credit expectancy[3] is based on his allegation that "LoanCare reported Plaintiff's account to credit reporting agencies as late when the account was current." ECF No. 4 at PageID #: 57. State law claims "relating to the responsibilities of persons who furnish information to consumer reporting agencies" are preempted by the Fair Credit Reporting Act. 15 U.S.C. § 1681t(b); *see Shugart v. Ocwen Loan Servicing, LLC*, 747 F. Supp. 2d 938, 944 (S.D. Ohio 2010) (state law claim alleging that defendant misrepresented to credit reporting agencies that plaintiff was late on his mortgage payments was preempted by the Fair Credit Reporting Act). Because Plaintiff's claim for tortious interference squarely falls within the meaning of § 1681t(b), it is preempted by the Fair Credit Reporting Act.

Accordingly, Defendants' motion to dismiss Plaintiff's claim for tortious interference with credit expectancy is granted.

### 8. Ohio Consumer Sales Practices Act (Count Eight)

Plaintiff alleges that Nations Lending violated O.R.C. §§ 1345.02(F), 1345.03, and 1345.031 of the OCSPA. The OCSPA prohibits unfair or deceptive acts and unconscionable acts

---

[3] In his opposition, Plaintiff recharacterizes his claim as a claim for slander of credit under state law. ECF No. 15 at PageID #: 248. This does not change the result.

or practices by suppliers in consumer transactions. *Anderson v. Barclay's Capital Real Estate, Inc.*, 989 N.E.2d 997, 999 (Ohio 2013). "Transactions in connection with residential mortgages between . . . nonbank mortgage lenders and their customers" are consumer transactions under the OCSPA. O.R.C. § 1345.02(A). Nonbank mortgage lenders are suppliers under OCSPA, but mortgage loan servicers are not. *Id.* at 1345.02(C); *Barclay's Capital*, 989 N.E.2d at 1002-03.

Nations Lending, as a nonbank mortgage lender, is a supplier under the OCSPA. Transactions between Nations Lending and Plaintiff in connection with Plaintiff's mortgage loan, are consumer transactions. Plaintiff, however, pleads no facts alleging that Nations Lending engaged in activity violating the OCSPA. Rather, Plaintiff bases his OCSPA claim entirely on actions allegedly taken by LoanCare in the servicing of Plaintiff's mortgage loan. ECF No. 4 at PageID #: 55-58; ECF No. 15 at PageID #: 245. But LoanCare, as a mortgage loan servicer, is not a supplier under the OCSPA. And each OCSPA violation alleged by Plaintiff requires a supplier to affirmatively commit an act or engage in a practice. *See* O.R.C. §§ 1345.02(F) ("[T]he act of a supplier in doing either of the following is deceptive"); 1345.03(A) ("No supplier shall commit an unconscionable act or practice in connection with a consumer transaction."); 1345.031(A) ("No supplier shall commit an unconscionable act or practice concerning a consumer transaction in connection with the origination of a residential mortgage."). Though Plaintiff claims that it is sufficient to plead that Nations Lending, a supplier, committed these acts through LoanCare, a loan servicer, he provides no legal authority

(5:19CV809)

in support.  *Cf. Powers v. Green Tree Servicing, LLC*, No. 102753, 2015 WL 4987744 (Ohio Ct. App. Aug. 20, 2015) (claim that nonbank mortgage lender sent mortgagor a letter threatening allegedly illegal action may constitute a violation of the OCSPA).

Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's claim under the OCSPA.

### 9.  Declaratory Judgment (Count Five)

The purpose of a declaratory judgment action is "to serve the useful end of disposing of uncertain or disputed obligations quickly and conclusively."  *M6 Motors, Inc. v. Nissan of N. Olmsted, LLC*, 14 N.E.3d 1054, 1061 (Ohio Ct. App. 2014).  Dismissal of a claim for declaratory judgment, without addressing the merits of the case, is proper if "there is (1) neither a justiciable issue nor an actual controversy between the parties requiring speedy relief, or (2) the declaratory judgment will not terminate the uncertainty or controversy."  *Id.*

Because at least some of Plaintiff's claims survive Defendants' Rule 12(b) motion, an actual controversy exists between the parties.  Nonetheless, Defendants contend that, because "Plaintiff seeks relief far beyond merely interpreting the rights and obligations of the parties and seeks specific performance of his breach of contract claim[,]" his claims are not well-suited to declaratory relief.  ECF No. 8-1 at PageID #: 107.  Defendants do not further explain why declaratory relief could not be granted in this matter.  Accordingly, Defendants' argument is not well-taken.

Defendants' motion to dismiss Plaintiff's claim for declaratory judgment is denied.

### IV.  Conclusion

(5:19CV809)

For the reasons stated in this Order, Defendants' motion to dismiss Plaintiff's Amended Complaint for failure to state a claim (ECF No. 8) is granted with respect to all counts, except for Count Eleven as to Defendant LoanCare, Count One as to Defendant Nations Lending, and Count Five as to Defendants LoanCare and Nations Lending.


IT IS SO ORDERED.


 July 31, 2019                              /s/ Benita Y. Pearson
Date                                      Benita Y. Pearson
                                         United States District Judge